UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARIE BELYEW, | No. 2:17-cv-0508 KJM AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| KORY L. HONEA, et al., | |
| Defendants. | |

Plaintiff is a former county and current state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court are plaintiff's motion to quash (ECF No. 61) and defendants' motion for summary judgment (ECF No. 65).

I.      Procedural History

This case proceeds on plaintiff's first amended complaint. ECF No. 23. Upon screening the court found that plaintiff had stated claims for relief against defendants Moreland and Spencer, but that she had not stated any cognizable claims for relief against defendant Honea. ECF No. 26. The claims against defendant Honea were dismissed without leave to amend. ECF No. 31. After the close of discovery, defendants filed a motion for summary judgment (ECF No. 65), which plaintiff opposes (ECF No. 70). Also before the court is plaintiff's objections to defendants' subpoena for her medical records (ECF No. 61), which was construed as a motion to quash (ECF No. 62).

1

II. Plaintiff's Allegations

In Claim One, plaintiff alleges that on December 24, 2016, defendant Moreland forced her to perform a squat-and-cough procedure multiple times as a part of a strip search, despite being informed that plaintiff could not bend at the knee because of severe back and knee problems. ECF No. 23 at 3. Moreland then told plaintiff to place her face on the floor of the shower, which plaintiff objected to because she did not want to be exposed to disease, prompting Moreland to threaten to bring other officers and "'make [her]' do it." Id. Plaintiff was then forced to "cough and spread [her] anus and vagina until [Moreland] could 'see inside.'" Id. The search caused plaintiff extreme psychological trauma because she has an extensive history of sexual and physical abuse and rape, and her knee gave out causing physical pain. Id.

Plaintiff alleges in Claim Two that when she was transported back from her trial readiness conference in early 2017, defendant Spencer "slammed [her] up against the wall and twisted [her] left wrist until it 'popped.'" Id. at 4. When plaintiff complained, Spencer stated, "'It's not meant to be comfortable. You shouldn't have told on GRAY.'" Id. Spencer then placed plaintiff in a holding cell covered in feces and various bodily fluids where she was unable to sit or lay down and she was left there for fourteen hours. Id. During her time in the cell, plaintiff overheard officers, including Spencer, making comments about how she filed a lot of grievances. Id.

Finally, in Claim Three, plaintiff alleges that on November 20, 2017, Moreland retaliated against her for filing grievances by making her repeatedly squat and cough during a strip search despite properly complying the first time. Id. at 5. When plaintiff went to put her clothes on, she heard either Moreland or the officer with her whisper, "'See if she keeps tellin' on us.'" Id.

III. Motion to Quash

Plaintiff has filed a motion to quash in which she objects to defendants' subpoena for "medical records, jail inmate file and grievances" that she filed between April 12, 2018, to the present. ECF No. 61. She argues that her information from the California Department of Corrections and Rehabilitation is not relevant to this lawsuit because the prison facility where she is housed is not a named defendant. Id. Defendants oppose the motion on the ground that plaintiff has alleged both physical and psychological damages as a result of defendants' conduct,

thereby making the requested records relevant and discoverable because they relate her damages. ECF No. 63.

"As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."  Fed. R. Civ. P. 34(c).

> The Ninth Circuit has yet to address the question of whether a party has standing to bring a motion to quash since usually only the subpoenaed non-party may move to quash. The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.

Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 299 F.R.D. 638, 643 (E.D. Cal. 2014) (citing Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997)).  Under this general rule, plaintiff lacks standing to object to the subpoenas on grounds of relevance, and to the extent she relies on such arguments, the motion is denied.

To the extent plaintiff may be attempting to claim a constitutional right to informational privacy, while that right extends to medical information it is not absolute and can be infringed on when there is a "proper governmental interest."  Coons v. Lew, 762 F.3d 891, 900 (9th Cir. 2014).  Furthermore, a plaintiff may waive the right to privacy of her medical records by putting her medical condition at issue, as plaintiff has done in this case.  Smith v. Solano County, No. 2:11-cv-00142 MCE EFB P, 2012 WL 3727332, at *1, 2012 U.S. Dist. LEXIS 120869, at *3-4 (E.D. Cal. Aug. 24, 2012) (where plaintiff put medical care at issue, "[medical] records are relevant to determine, among other things, what conditions plaintiff suffers from, what treatment he required, what treatment he was provided, and what he consequences he suffered from any alleged failure to treat"); Ferrell v. Glen-Gery Brick, 678 F. Supp. 111, 112-13 (E.D. Pa. 1987) ("[W]hen a party places his or her physical or mental condition in issue, the privacy right is waived")).  As defendants point out, plaintiff has alleged both physical and psychological damages from defendants' conduct.  Thus, her medical records since the alleged incidents are relevant to the issue of damages, as they may provide information related to whether plaintiff has any lasting injuries or suffered subsequent injuries that would affect defendants' potential damages.  The motion to quash will therefore be denied.

IV.     Motion for Summary Judgment

     A.     Defendants' Arguments

Defendants argue that they are entitled to summary judgment on the ground that they did not violate plaintiff's constitutional rights because neither defendant's conduct was retaliatory in nature, Moreland conducted the first strip search of plaintiff in a reasonable manner and was not present during the second strip search, and Spencer did not subject plaintiff to excessive force or unconstitutional conditions.  ECF No. 65.  Alternatively, defendants argue that they are entitled to qualified immunity and that plaintiff failed to exhaust her administrative remedies prior to filing suit.  Id.

     B.     Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation omitted).

4

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes defendants' motion and argues that she exhausted her administrative remedies, defendants' conduct violated her constitutional rights, and they are not entitled to qualified immunity. ECF No. 70. She asserts that Moreland was present at both strip searches and conducted them in an unreasonable manner, and that Moreland's conduct during the second search was motivated by plaintiff's many grievances. Id. Plaintiff argues that Spencer used excessive force against her and put her in an unsanitary cell as punishment for filing a grievance against another officer. Id.

### C. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 65-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

### D. Undisputed Material Facts

Plaintiff did not separately respond to Defendants' Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed.

#### i. December 24, 2016 Strip Search

On December 24, 2016, plaintiff was taken to Butte County Jail after she was arrested for assault with a deadly weapon and corporal injury on a spouse. DSUF ¶ 1. This was her first time at Butte County Jail. DSUF ¶ 2. Based on the charge for assault with a deadly weapon, policy required that she undergo a visual strip search prior to being placed in a housing unit at the jail. DSUF ¶ 3. During the booking process, plaintiff was asked medical and psychological questions, including whether she had any injuries. DSUF ¶ 5. At the time, she identified defensive wounds, but did not identify prior knee or back issues. DSUF ¶ 6. Plaintiff was then taken to a private room, known as the booking showers, to be visually strip searched. DSUF ¶ 7.

Defendant Moreland, who is female, supervised plaintiff's visual strip search, which was their first interaction. DSUF ¶ 8. Moreland explained the strip search process to plaintiff and ordered plaintiff to submit to a strip search. DSUF ¶ 9. The strip search process was comprised of seven steps and required plaintiff to 1) remove her clothing; 2) raiser her arms above her head and turn 360 degrees; 3) bend forward and run her hands through her hair; 4) turn her head first to the left and then to the right so her ear orifices could be inspected; 5) open her mouth and run a

finger over the upper and lower gum areas, then raise her tongue so the interior of her mouth could be inspected and remove dentures if applicable; 6) turn around and raise one foot first, then the other so the bottoms of her feet could be checked; and 7) turn around, bend forward and spread her buttocks if necessary to view the anus for a visual cavity search. Id.

Plaintiff completed the first six steps and Moreland instructed plaintiff to squat and cough to complete step seven. DSUF ¶ 10. Plaintiff responded that she could not squat and cough because she had a bad back and knees. DSUF ¶ 11. When plaintiff stated that she would not squat and cough, Moreland responded that she would ask for additional correctional deputies if plaintiff refused to complete the last step. DSUF ¶¶ 13-14. Because plaintiff informed Moreland that she had bad knees and could not bend her knees, Moreland used a modified method and had plaintiff bend at the waist and place her head near her feet, about a foot from the floor, grab her buttocks, and cough. DSUF ¶¶ 15, 67. This procedure did not require plaintiff to bend her knees. DSUF ¶ 16. Plaintiff spent a couple of seconds in this position and coughed three times at Moreland's request. DSUF ¶ 17. Plaintiff claims that she was required to bend over and cough multiple times, that her knee almost went out, and that during the coughing some urine released and ran down her leg. DSUF ¶¶ 18, 20, 22. After the search, plaintiff overheard Moreland tell another deputy that she did not trust plaintiff because "she was leaking." DSUF ¶ 21.

          ii.   February 1, 2017 Use of Force

On the evening of February 1, 2017, plaintiff was returned to the Butte County Jail booking area from the Colusa County Courthouse. DSUF ¶ 24. When plaintiff arrived, she was in handcuffs with her hands in front, and Spencer directed her to face the wall in order to remove the handcuffs. DSUF ¶¶ 25-26. Plaintiff stated in her deposition that she was inches away from the wall (PL's Depo. at 40:25-41:2 (ECF No. 65-4 at 44-45)), but asserts in her opposition that she was slammed against the wall (ECF No. 70 at 4, 7). Spencer first grabbed plaintiff's left wrist and twisted the wrist to remove the handcuff. DSUF ¶ 9. Defendants assert that Spencer's action in twisting plaintiff's wrist was necessary to remove the handcuff bracelet and that she stopped once the handcuffs were removed. DSUF ¶ 73. Plaintiff asserts that Spencer deliberately wrenched her wrist until it popped, and when plaintiff told Spencer she was hurting her, Spencer

told plaintiff that it was not meant to be comfortable and that she "shouldn't have told on Gray." ECF No. 70 at 4, 7. Spencer then removed the right handcuff in what plaintiff believed was an aggressive manner. DSUF ¶ 32.

After plaintiff's handcuffs were removed, she was placed in a booking cell overnight. DSUF ¶ 34. At the time, plaintiff was classified as protective custody, which required the jail to find appropriate housing and inmates who could be near plaintiff. DSUF ¶ 35. Defendants assert that the cell where plaintiff was placed was cleaned at least once a day and that the cells, floor, and walls were cleaned with a disinfectant cleaning material. DSUF ¶¶ 78-79. Spencer was not aware of any urine, feces, blood, or other substances within the cell, and plaintiff never complained about the cell's condition to Spencer. DSUF ¶ 80. Plaintiff asserts that the cell was "infested with dried blood, feces, urine, boogers, and loogies," and that she heard Spencer comment on her lawsuit against a Colusa County police deputy. ECF No. 70 at 4, 7-8. She further asserts that there was nowhere to sit or lay down, that her requests to be moved or for a chair were denied, and that she was stuck standing for seventeen hours in excruciating pain. Id. at 4, 8.

### iii. November 20, 2017 Strip Search

On November 20, 2017, plaintiff was transported from Napa State Hospital back to Butte County Jail. DSUF ¶ 47. Since plaintiff was returning to county custody, she was required by policy to pass a visual strip search prior to entering the housing units. DSUF ¶ 48. The strip search took place in the same booking shower area as the December 24, 2016 strip search. DSUF ¶ 49. Defendants assert that Moreland was not working at Butte County Jail on either November 20 or 21, 2017, because she was working at another facility doing "OT SWAP Coverage" which required her to supervise inmates providing laundry, trash, and lawn maintenance around the premises. DSUF ¶¶ 51-52. As a result, Moreland did not spend any time inside the jail and did not perform any duties inside the jail such as booking and housing inmates or visual strip searches. DSUF ¶ 53. Plaintiff asserts that regardless of what the staffing records show, Moreland was present during the November 20, 2017 strip search. ECF No. 70 at 5.

////

          iv.   Grievance Policy

Butte County Jail requires inmates to complete a three-level appeals process to complete an inmate grievance, and plaintiff was familiar with the procedure and how to submit a grievance. DSUF ¶¶ 56-57. An inmate seeking to file a grievance was required to request a grievance form by filling out an inmate request form and handing it to the housing deputy. ECF No. 65-4 at 108. The housing deputy would then ask about the nature of the grievance and attempt to resolve the issue. Id. The deputy would then sign and date the request form, give a copy to the inmate, and forward the request to the watch commander. Id. The watch commander would ask the inmate the nature of the grievance and attempt to resolve the issue before forwarding the request form to the administrative sergeant, who would issue a serial numbered inmate grievance form within twenty-four hours, excluding holidays and weekends. Id. The serial numbered form was recorded in the Inmate Grievance Form Log. Id. The grievance form was to be completed within seventy-two hours of receipt "by describing and referencing the alleged violation." Id. The completed form was to be given to the housing deputy, who would sign and date the form and provide a copy to the inmate. Id. The housing deputy would attempt to resolve the issue and forward the grievance form to the watch commander if it could not be resolved. Id.

Upon receiving the grievance, the watch commander would sign and date the form and direct an investigation of the grievance and attempt to resolve it within forty-eight hours. Id. at 109. The watch commander would make a proposed resolution and the inmate would sign and date the form and check one of two boxes, with the "has been" box terminating the grievance. Id. Grievances that were not properly completed or that were untimely would not be accepted, and the watch commander could deny a grievance "for reasons of cause or defect." Id. A reason for the denial was to be provided in writing. Id. The denied, unresolved, and resolved grievances were forwarded to the administrative sergeant who would then annotate the grievance log. Id. Denied and resolved grievances were forwarded to classification. Id. The administrative sergeant could deny a grievance "for reasons of defect or failure to comply with format guidelines," and the reason for denial was to be provided in writing. Id.

////

If an unresolved grievance alleged a violation of Sherriff's Office policy, state law, or federal law that could result in formal discipline, it was referred to the sheriff or designated representative through the jail commander.  Id.  The sheriff or designated representative would decide on a course of action and the inmate would be provided a copy to sign, date, and check one of two boxes.  Id.  Checking the "has been" box terminated the grievance.  Id.  Other unresolved grievances were to be forwarded to the appropriate correctional lieutenant for a hearing where the lieutenant would "hear the inmate, witnesses, and review pertinent information."  Id.  The lieutenant would try to resolve the grievance and issue a statement of the results on the same date as the hearing.  Id. at 109-10.  The inmate would then sign and date the form and check one of two boxes, with the "has been" box terminating the grievance.  Id. at 110.  In the event the lieutenant denied the grievance, the reason for the denial was to be provided in writing.  Id.  The administrative sergeant would annotate the grievance log with the result.  Id.

An appeal of the lieutenant's decision would be reviewed by the jail commander or designated representative, who would issue a decision in writing, exhausting the process.  Id.

### v. Plaintiff's Grievances

On December 29, 2016, plaintiff submitted inmate grievance 16-2133, regarding the allegations against Moreland in Claim One.  DSUF ¶ 61.  The grievance was denied for failing to comply with the grievance procedure and failing to find a constitutional violation based on the alleged conduct.  DSUF ¶ 62.  Plaintiff did not appeal the grievance.  DSUF ¶ 63.  Defendants assert that plaintiff did not file any grievances related to her allegations in Claims Two and Three (DSUF ¶ 64), while plaintiff asserts that she put in a request for a grievance form for the use of force but never received one and that she filed a grievance related to the cell conditions (ECF No. 70 at 4).

### E. Exhaustion

#### i. Legal Standard

Because plaintiff is a prisoner suing over the conditions of her confinement, her claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy she sought, plaintiff was required to exhaust her remedies.

12

Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

        ii.   Discussion

There is no dispute that a grievance process existed during the relevant time period. Instead, the parties dispute whether grievance 16-2133, which addressed the allegations in Claim One, was properly exhausted, and whether plaintiff attempted to grieve her other two claims and was prevented from doing so.

The parties do not dispute that grievance 16-2133 addresses plaintiff's claim against Moreland related to the December 24, 2016 strip search, or that the grievance was denied at the first level. However, defendants argue that the grievance was not exhausted because plaintiff did not appeal it through the final level of review (ECF No. 65-2 at 25), while plaintiff simply argues that she filed a grievance and exhausted her administrative remedies (ECF No. 70 at 1-2). Although defendants argue that plaintiff could have appealed the grievance to the next level, this assertion is not supported by the grievance policy. The policy states that "denied and resolved grievances will be forwarded to Classification," and addresses additional steps only for

unresolved grievances, indicating that only unresolved grievances can be appealed. ECF No. 65-4 at 109. There is no indication from the policy that an inmate had any other recourse once a grievance was denied.[1] Furthermore, it appears that the grievance was improperly denied, as it states it was denied because it was determined there was no violation of plaintiff's constitutional rights and because she did not "include the actual rule or violation [she] believe[d] the facility staff [had] violated." Id. at 284. However, the grievance clearly states that plaintiff believed Moreland violated the Fourth and Eighth Amendments during the strip search (id. at 285), and responses to other grievances that found no violation occurred stated that the grievance was without merit and that no further action was recommended rather than denying the grievance (see, e.g., id. at 166, 181, 206). It therefore appears that grievance 16-2133 was either exhausted or improperly denied, leaving plaintiff without any further available administrative remedies. Summary judgment on the ground that Claim One was not exhausted should therefore be denied.

With respect to Claims Two and Three, review of plaintiff's grievance file reveals that while she filed other grievances about Moreland and Spencer (ECF No. 65-4 at 198, 204, 267, 283), there are no grievances addressing the allegations that on February 1, 2017, Spencer used excessive force and put plaintiff in an unsanitary cell or that on November 20, 2017, Moreland conducted a strip search. In response to defendants' argument that she failed to grieve these issues, plaintiff makes a general assertion that she filed many grievances and that some "were 'lost' or 'whited out' to cover up misconduct," that she "filed appeals. These magically disappeared," and that "[i]f defendants complain these weren't filed, then they were arbitrarily destroyed in an attempt to mask their misconduct." ECF No. 70 at 2. She also claims that after Spencer used excessive force against her she "put in a request for a grievance form and never got one" and that she "asked for and filed a grievance" related to the cell conditions, but makes no claims that she grieved or attempted to grieve the November 20, 2017 strip search. Id. at 4-6.

////

---

[1] The court notes that none of the grievances that plaintiff appealed through the third level included a denial. See ECF No. 65-4 at 148-51 (18-0116), 162-68 (17-0847/17-0851), 180-83 (18-0330), 194-96 (17-0739), 205-06 (18-0157), 268-70 (17-0425).

Even assuming that plaintiff could make these statements admissible,[2] general allegations that grievances disappeared or were lost do not establish that the grievance process was unavailable with respect to the conduct alleged in Claims Two and Three. See F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." (citations omitted)); Jackson v. Baca, No. 12-cv-10393 JLS (JEM), 2018 WL 1916307, at *6, 2018 U.S. Dist. LEXIS 67144, at *18 (C.D. Cal. Feb. 13, 2018) ("'[V]ague assertion[s]' that prison officials did not process an inmate's appeals, or 'stopp[ed] them from being processed,' are insufficient to create a genuine factual dispute regarding the availability of a remedy." (alterations in original) (collecting cases)). Although plaintiff asserts that she requested a grievance form and one was never provided, she offers no details regarding to whom the request was made, when the request was made, or whether she followed up on the request. Similarly, though plaintiff claims that she submitted a grievance about her cell conditions, she does not provide a copy of the grievance and there are no facts regarding the contents of the grievance, when or to whom it was submitted, or whether it was exhausted. Accordingly, defendants have met their burden of showing that administrative remedies were available and that plaintiff did not exhaust them with respect to Claims Two and Three, and plaintiff has failed to show that she exhausted her administrative remedies or that they were unavailable. Defendants' motion for summary judgment should therefore be granted on the ground that plaintiff failed to exhaust her administrative remedies as to claims Two and Three.

   F. Unreasonable Search

    i. Legal Standard

A detention facility's strip-search policy is analyzed using the test for reasonableness outlined in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches." Bull v. City and County of San Francisco, 595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in original) (quoting Bell v. Wolfish, 441 U.S. 520, 558 (1979)). Under Bell, the court must balance

---

[2] Plaintiff's opposition is not signed under penalty of perjury.

15

"the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. In order to do so, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. (citations omitted).

"Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process," and the Supreme Court has held that all detainees, when joining a general detained population, can be subject to strip searches even without reasonable suspicion that a specific individual is concealing weapons or other contraband. Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 330-39 (2012). Further, strip searches that are limited to "visual inspection," even if "invasive and embarrassing," can be resolved in favor of the institution. Bull, 595 F.3d at 975 (holding that visual strip searches that are held in a "professional manner and in a place that afforded privacy" and done to prevent the smuggling of contraband did not violate Fourth Amendment). However, any searches done for the purpose of harassment are not constitutionally valid—the Supreme Court has held that "intentional harassment of even the most hardened criminals cannot be tolerated" by the Fourth Amendment's protections. Hudson v. Palmer, 468 U.S. 517, 528 (1984).

       ii. Discussion

Defendants have presented uncontested evidence that plaintiff was strip searched on December 24, 2016, as part of the intake process and that the search was limited to a visual search and was conducted by a female officer in a place that afforded privacy. DSUF ¶¶ 3, 7-19, 68. They have also provided undisputed evidence that when plaintiff told Moreland that she could not "squat and cough" because of her bad back and knees, that Moreland directed her to use an alternative method that did not require plaintiff to bend at the knees. DSUF ¶¶ 11-16, 66-67.

Plaintiff argues that the search was unreasonable because Moreland required her to repeat the search—causing her emotional distress and physical pain—and "threatened [plaintiff] with physical violence if [she] did not comply. ECF No. 70 at 3. The opposition does not elaborate on how Moreland threatened her, but based on the complaint and plaintiff's deposition, the alleged threat appears to be that Moreland would call for additional officers to assist if plaintiff did not

comply with the strip search. ECF No. 23 at 3; PL's Depo. at 26:8-11, 27:19-24, 30:7-17 (ECF No. 65-4 at 30-31, 34). Plaintiff also argues that the search was unreasonable because upon completion, Moreland commented to a male officer who was behind the door that she did not trust plaintiff because she "leaked." ECF No. 70 at 3.

Defendants have established that the strip search was limited in scope, the search was conducted in a private area and in a professional manner, and there was sufficient justification for the search. Though plaintiff argues she was required to repeat the process, she does not present any evidence that Moreland required her to do so more times than was necessary to properly complete the search. Furthermore, plaintiff's deposition testimony reveals that her belief that Moreland was attempting to humiliate her by making her repeat the process was speculation based on her interactions with sheriff's department patrol units and the fact that the process itself is humiliating. PL's Depo. at 55:18-56:15 (ECF No. 65-4 at 59-60). Similarly, though plaintiff alleges that a male officer was present behind the door, she presents no evidence that he conducted the search or was able to see plaintiff during the search. With respect to plaintiff's claim that she was threatened with violence if she did not complete the search, the allegation that Moreland told her that other officers would be called to assist if plaintiff did not comply with the search does not render the search unreasonable or equate to a threat of physical violence. Finally, assuming Moreland did in fact comment to another officer that she did not trust plaintiff because she leaked, though embarrassing, this does not violate plaintiff's constitutional rights.

There is no evidence that defendant Moreland violated plaintiff's Fourth Amendment rights during the strip search on December 24, 2016, and summary judgment should therefore be granted as to Claim One.

### G. Conclusion

The court finds that plaintiff either exhausted or was excused from exhausting her administrative remedies with respect to Claim One, and summary judgement on that ground should be denied. However, summary judgment should be granted as to Claim One on the ground that defendant Moreland did not violate plaintiff's Fourth Amendment rights. Summary judgment should be granted as to Claims Two and Three because plaintiff failed to exhaust her

administrative remedies prior to filing suit. Because these claims are unexhausted, the court declines to reach their merits. The court also declines to address the defendants' claim that they are entitled to qualified immunity because dismissal is appropriate on other grounds.

V.       Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that summary judgment be granted as to your claim that Moreland violated your constitutional rights during the December 24, 2016 strip search because you have not shown that the search was conducted in an unreasonable manner. Even though strip searches can be humiliating and feel invasive, they are not forbidden by the Constitution and the evidence does not show that in this case the search went beyond legal limits. It is being recommended that defendants' motion for summary judgment be granted on your other claims, because you have not shown that you exhausted the grievance process regarding your claims against Spencer for excessive force and the condition of the cell she placed you in, or against Moreland for her conduct during your strip search on November 20, 2017.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to quash (ECF No. 61) is DENIED.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 65) be GRANTED in part and DENIED in part as follows:

    a. GRANTED with respect to Claims Two and Three on the ground that plaintiff did not exhaust her administrative remedies prior to filing suit;

    b. GRANTED with respect to Claim One on the ground that defendant Moreland did not violate plaintiff's Fourth Amendment rights; and

    c. DENIED with respect to Claim One on the ground that plaintiff did not exhaust her administrative remedies.

2. Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE