1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LISA MARIE BELYEW,                        No.  2:17-cv-0508 KJM AC P

12                  Plaintiff,

13         v.                                  ORDER AND AMENDED FINDINGS &
                                               RECOMMENDATIONS
14   KORY L. HONEA, et al.,

15                  Defendants.

16

17        Plaintiff is a former county and current state prisoner proceeding pro se with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  On July 28, 2023, the undersigned issued findings and

19   recommendations (ECF No. 85), to which plaintiff has filed objections (ECF Nos. 87, 89, 90).

20   Plaintiff's objections include a statement that "a male officer was there the whole time watching

21   outside the door."  ECF No. 89 at 3.  The previously issued findings and recommendations are

22   therefore amended to add subsections VI.A.vi and VI.B.iv, which address the claim made in

23   plaintiff's objections.  The following findings and recommendations are otherwise unchanged

24   from those at ECF No. 85, which are hereby withdrawn.

25   I.     Procedural History

26        In findings and recommendations filed September 30, 2022, the undersigned

27   recommended that defendants' motion for summary judgment be granted in part and denied in

28   part.  ECF No. 73.  The assigned district judge adopted the findings and recommendations in part,

granting summary judgment with respect to Claims Two and Three on the ground that plaintiff did not exhaust her administrative remedies prior to filing suit, and denying the motion as to Claim One insofar as defendants relied on a non-exhaustion theory.  ECF No. 79.  The district judge declined to adopt the recommendation that the motion be granted as to Claim One on the alternative ground that defendant Moreland did not violate plaintiff's Fourth Amendment rights. Id.  Specifically, the district judge found that plaintiff's allegations in the first amended complaint called into question the "findings that defendants have established as undisputed that 'the search was conducted in a private area and in a professional manner' and that defendant Moreland did not require plaintiff to go through search procedures 'more times than was necessary to properly complete the search.'"  Id. at 2.  The matter was referred back to the undersigned for further findings and recommendations on the merits of Claim One and, as appropriate, on defendant Moreland's qualified immunity defense.  Id.

II.     Plaintiff's Allegations

In Claim One, plaintiff alleged as follows:

> On or about December 24, 2016, I was strip-searched and forced to squat and cough multiple times by Officer MORELAND.  I informed MORELAND that I had severe back and knee problems that prevented me from bending at my knees.  MORELAND then told me to place my face on the floor of the shower.  I told her I did not want to do this because it could put me in danger of contracting Hepatitis A, B, C, HIV and/or Herpes.  MORELAND threatened that if I did not do it she would get some other officers and "make me" do it.  MORELAND made me cough and spread my anus and vagina until she could "see inside."  Then I heard MORELAND tell a male officer who was standing outside the door while this process was going on, the door was kept open, and she told him "I don't trust her because she 'leaked' on herself.["]  Because of my extensive history of sexual/physical abuse and rape this cause me extreme psychological trauma and physical pain because my knees gave out on me.  I filed a grievance on MORELAND for this.  I filed a grievance for this incident on or about December 30, 2019 and it was denied.

ECF No. 23 at 3.

III.    Motion for Summary Judgment

A.     Defendant's Arguments

Defendant Moreland argues that the December 24, 2016, strip search was not conducted in an unreasonable manner and therefore did not violate plaintiff's Fourth Amendment rights.  ECF

1    No. 65-2 at 12-14.  She alternatively argues that she is entitled to qualified immunity.  Id. at 21-

2    23.

3                    B.      Plaintiff's Response

4            As noted in the previous findings and recommendations, plaintiff has failed to comply

5    with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a

6    fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of

7    materials in the record."  Plaintiff has also failed to file a separate document in response to

8    defendants' statement of undisputed facts that identifies which facts are admitted and which are

9    disputed, as required by Local Rule 260(b).

10           "Pro se litigants must follow the same rules of procedure that govern other litigants."

11   King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

12   Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

13   established that district courts are to "construe liberally motion papers and pleadings filed by pro

14   se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

15   611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without

16   counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily

17   imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

18   Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

19   internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

20   "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

21   omitted).

22           Accordingly, the court considers the record before it in its entirety despite plaintiff's

23   failure to be in strict compliance with the applicable rules.  However, only those assertions in the

24   opposition which have evidentiary support in the record will be considered.  In her opposition,

25   plaintiff asserts that defendant Moreland conducted the December 24, 2016 strip search in an

26   unreasonable manner and is therefore not entitled to summary judgment.  ECF No. 70 at 3-4.

27   ///

28   ///

3

1    IV.    Legal Standards for Summary Judgment

2         Summary judgment is appropriate when the moving party "shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

5    of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig.,

6    627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

7    The moving party may accomplish this by "citing to particular parts of materials in the record,

8    including depositions, documents, electronically stored information, affidavits or declarations,

9    stipulations (including those made for purposes of the motion only), admissions, interrogatory

10   answers, or other materials" or by showing that such materials "do not establish the absence or

11   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

12   support the fact."  Fed. R. Civ. P. 56(c)(1).

13        "Where the non-moving party bears the burden of proof at trial, the moving party need

14   only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

15   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

16   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

17   motion, against a party who fails to make a showing sufficient to establish the existence of an

18   element essential to that party's case, and on which that party will bear the burden of proof at

19   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

20   of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

21   a circumstance, summary judgment should "be granted so long as whatever is before the district

22   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

23   56(c), is satisfied."  Id.

24        If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

26   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

27   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

28   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

4

admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 65-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

1       V.      Undisputed Material Facts

2               Plaintiff did not separately respond to Defendants' Statement of Undisputed Facts

3       (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed.

4               On December 24, 2016, plaintiff was taken to Butte County Jail after she was arrested for

5       assault with a deadly weapon and corporal injury on a spouse.  DSUF (ECF No. 65-3) ¶ 1; PL's

6       Depo. at 15:5-14 (ECF No. 65-4 at 19).  This was her first time at Butte County Jail.  DSUF ¶ 2;

7       PL's Depo. at 13:15-17 (ECF No. 65-4 at 17).  Based on the charge for assault with a deadly

8       weapon, policy required that she undergo a visual strip search prior to being placed in a housing

9       unit at the jail.  DSUF ¶ 3; PL's Response to Admission No. 7 (ECF No. 65-4 at 124).  During the

10      booking process, plaintiff was asked medical and psychological questions, including whether she

11      had any injuries.  DSUF ¶ 5; PL's Depo. at 16:16-25, 18:18-22 (ECF No. 65-4 at 20, 22).  At the

12      time, she also completed a classification questionnaire in which she identified defensive wounds

13      but did not identify prior knee or back issues.  DSUF ¶ 6; PL's Depo. at 17:5-24, 18:18-22;

14      67:10-13 (ECF No. 65-4 at 21-22, 71).  Plaintiff was then taken to the booking showers to be

15      visually strip searched.  DSUF ¶ 7; PL's Depo. at 24:10-12 (ECF No. 65-4 at 28).  The booking

16      shower was a room with "a toilet, a sink, and a little shower stall" and a little window through

17      which inmates were given their clothes.  PL's Depo. at 24:13-17 (ECF No. 65-4 at 28).  Plaintiff

18      entered the room by herself, and Moreland stood outside holding the door open.  PL's Depo. at

19      26:18-21 (ECF No. 65-4 at 30).

20              Defendant Moreland, who is female, supervised plaintiff's visual strip search, which was

21      their first interaction that plaintiff could recall.[1]  DSUF ¶ 8; ECF No. 23 at 3; PL's Depo. at

22      24:18-20; 35:19-23 (ECF No. 65-4 at 28, 39).  Moreland explained the strip search process to

23      plaintiff and ordered plaintiff to submit to a strip search.  DSUF ¶ 9; PL's Depo. at 24:22-24

24      (ECF No. 65-4 at 28).  The strip search process was comprised of seven steps, the last of which

25      required plaintiff to turn around, bend forward and spread her buttocks if necessary to view the

26      ///

27      _____

28      [1]  Plaintiff testified during her deposition that she may have spoken to Moreland in booking, but
        she did not recall.  PL's Depo. at 35:19-23 (ECF No. 65-4 at 39).

                                                     6

1  anus and vagina for a visual cavity search.  DSUF ¶ 9; Moreland Decl. ¶ 4 (ECF No. 65-4 at 132);

2  ECF No. 23 at 3; PL's Depo. at 31:21-32:3 (ECF No. 65-4 at 35-36).

3          Plaintiff completed the first six steps and Moreland instructed plaintiff to squat and cough

4  to complete step seven.  DSUF ¶ 10; ECF No. 23 at 3.  Plaintiff responded that she could not

5  squat and cough because she had a bad back and knees that prevented her from bending at the

6  knees.  DSUF ¶ 11; ECF No. 23 at 3; PL's Depo. at 26:14-17, 27:4-17 (ECF No. 65-4 at 30-31).

7  Because plaintiff informed Moreland that she had bad knees and could not bend her knees,

8  Moreland used a modified method and instructed plaintiff to bend at the waist and place her head

9  near her feet, grab her buttocks, and cough.  DSUF ¶¶ 15, 66-67.  This procedure did not require

10  plaintiff to bend her knees.  DSUF ¶ 16.  Plaintiff asserts that after she told Moreland she could

11  not bend her knees, Moreland told her to place her face on the floor of the shower.  ECF No. 23 at

12  3; PL's Depo. at 26:12-27:22 (ECF No. 65-4 at 30-31).  When plaintiff stated that she would not

13  place her face on the floor, Moreland responded that she would get additional correctional

14  deputies to "make [her] do it if [she] wouldn't comply."[2]  PL's Depo. at 27:16-24 (ECF No. 65-4

15  at 31); ECF No. 23 at 3.

16          To complete the search, plaintiff bent forward at the waist without bending her knees, and

17  tried to complete the process as quickly as possible.  PL's Depo. at 28:1-2, 29:7-10, 32:5-17 (ECF

18  No. 65-4 at 32-33, 36).  She spent a few seconds in this position, during which she was required

19  to grab her buttocks and cough three times.  DSUF ¶¶ 15, 17; PL's Depo. at 29:7-14, 31:14-32:4

20  (ECF No. 65-4 at 33, 35-36).  While bent over, her face was about a foot from the floor but did

21  not ever touch the floor.  PL's Depo. at 26:7-11, 29:14-16 (ECF No. 65-4 at 30, 33).  Plaintiff

22  claims that she was required to complete the bend and cough procedure three times, that her knee

23  almost went out, and that during the coughing some urine released and ran down her leg.  DSUF

24  ¶¶ 18, 20, 22; PL's Depo. at 31:11-13, 75:2-14, 81:23 (ECF No. 65-4 at 35, 79, 85).  Moreland

25  ──────────────────

26  [2] Defendants' statement of facts does not explicitly address whether Moreland directed plaintiff
    to put her face on the floor, but does state that Moreland told plaintiff she would request

27  additional correctional deputies if plaintiff refused to complete the last step (bend and cough).
    DSUF ¶ 14.  For purposes of this motion, the court will assume that plaintiff's allegation that

28  Moreland told her to put her face on the floor is true.

1   did not tell plaintiff why she was required to complete the procedure three times.  PL's Depo. at

2   75:20-76:23 (ECF No. 65-4 at 79-80).  After the search, plaintiff overheard Moreland tell a male

3   deputy outside the door that she did not trust plaintiff because "she was leaking."  DSUF ¶ 21;

4   ECF No. 23 at 3; PL's Depo. at 28:13-16, 30:21-31:5 (ECF No. 65-4 at 32, 34-35).

5       VI.    Discussion

6           A.    Fourth Amendment

7               i.  Legal Standard

8       A detention facility's strip-search policy is analyzed using the test for reasonableness

9   outlined in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches."

10  Bull v. City and County of San Francisco, 595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in

11  original) (quoting Bell v. Wolfish, 441 U.S. 520, 558 (1979)).  Under Bell, the court must balance

12  "the need for the particular search against the invasion of personal rights that the search entails."

13  Bell, 441 U.S. at 559.  In order to do so, "[c]ourts must consider the scope of the particular

14  intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

15  which it is conducted."  Id. (citations omitted).

16      "Correctional officials have a significant interest in conducting a thorough search as a

17  standard part of the intake process."  Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 330

18  (2012).  The Supreme Court has accordingly held that all arrestees, when joining the general

19  population of a jail, can be subject to strip searches even without reasonable suspicion that a

20  specific individual is concealing weapons or other contraband.  Id. at 330-39.  Those strip

21  searches that are limited to "visual inspection," even if "invasive and embarrassing," are

22  permissible.  Bull, 595 F.3d at 975 (holding that visual strip searches that are held in a

23  "professional manner and in a place that afforded privacy" and conducted to prevent the

24  smuggling of contraband did not violate Fourth Amendment).  However, any searches done for

25  the purpose of harassment are not constitutionally valid—the Supreme Court has held that

26  "intentional harassment of even the most hardened criminals cannot be tolerated" by the Fourth

27  Amendment's protections.  Hudson v. Palmer, 468 U.S. 517, 528 (1984).  Accordingly, strip

28  searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological

8

1  interest may violate the Fourth Amendment.  <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 332 (9th

2  Cir. 1988).

3            ii.   <u>Scope of Intrusion and Justification for Search</u>

4        In this case, the intrusion was limited in scope to a visual body cavity inspection and

5  "bend and cough" procedure conducted by a same-gender officer.[3]  Such a search was required

6  by jail policy, and defendants justify that policy on institutional security grounds.  The Supreme

7  Court has squarely held that general institutional security concerns render intrusions of this scope

8  (routine visual inspection of genitals and anus, and "squat and cough" procedure) reasonable

9  within the meaning of the Fourth Amendment.  <u>Bell</u>, 441 U.S. at 558-560; <u>Florence</u>, 566 U.S. at

10  324, 339.  Accordingly, these two factors weigh in favor of finding the search reasonable.  <u>See</u>

11  <u>Bull</u>, 595 F.3d at 975, 982.

12            iii.   <u>Manner of the Search</u>

13        Plaintiff argues that the manner in which the search was conducted rendered the search

14  unconstitutional.  In this context, the detainee "bears the burden of showing that [jail] officials

15  intentionally used exaggerated or excessive means to enforce security."  <u>Michenfelder</u>, 860 F.2d

16  at 333.  Here, plaintiff asserts that the search was unreasonable because Moreland required her to

17  repeat the search—causing her emotional distress and physical pain—and "threatened [plaintiff]

18  with physical violence if [she] did not comply."  ECF No. 70 at 3.  She also argues that the search

19  was unreasonable because upon completion, Moreland commented to a male officer who was

20  behind the door that she did not trust plaintiff because she "leaked."  <u>Id.</u>

21        Plaintiff was required to bend over and cough three times, which is not an objectively

22  excessive number of repetitions and does not support an inference of vindictiveness or

23  harassment.  <u>See</u> <u>Crockett v. Jensen</u>, No. 16-cv-0959 PHX JJT (JZB), 2018 WL 10809993, at *7,

24  2018 U.S. Dist. LEXIS 237066, at *19 (D. Ariz. July 25, 2018) (direction to repeat the "squat and

25  cough" portion of search five times, without more, was not "excessive, vindictive, harassing, or

26  unrelated to any legitimate penological interest" (citation omitted)); <u>Johnson v. Carroll</u>, No. 2:08-

27  _____

28  [3]  <u>Cf.</u> <u>Byrd v. Maricopa Cnty. Sheriff's Dep't</u>, 629 F.3d 1135, 1146 (9th Cir. 2011) (cross-gender searches unconstitutional outside of emergency situation).

1  cv-1494 KJN, 2012 WL 2069561, at *30, 2012 U.S. Dist. LEXIS 79380, at *92 (E.D. Cal. June 7,

2  2012) (requiring prisoner to complete "squat and cough" portion of the strip search three times

3  was within constitutional limits).  Plaintiff has acknowledged that each instance of "bend and

4  cough" was very brief, which further weighs against a finding of excessiveness.

5          Moreland has provided a credible and penologically justified explanation for repeating the

6  procedure.  In support of her motion, Moreland declares under penalty of perjury that, "[i]f an

7  inmate does not spread their buttocks wide enough or cough enough to verify there is no

8  contraband in that person's anus or vagina, our training requires that the inmate complete this

9  portion of the visual strip search again" and that those are the only two reasons she would require

10 an inmate to repeat the procedure.  Moreland Decl. at 3, ¶ 5 (ECF No. 65-4 at 133).  In response,

11 plaintiff makes only conclusory assertions that the search was intended to harass her because she

12 was made to repeat the process, and her deposition testimony reflects that this belief was based on

13 speculation due to her interactions with sheriff's department patrol units and the fact that the

14 process itself is humiliating, rather than any conduct by Moreland.  PL's Depo. at 24:2-4, 55:18-

15 56:15 (ECF No. 65-4 at 28, 59-60).  This does not create a triable issue as to the credibility of

16 Moreland's explanation.  See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028

17 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without

18 evidence supporting that belief, is no more than speculation or unfounded accusation about

19 whether the defendant really did act from an unlawful motive.").  Plaintiff's testimony that she

20 attempted to complete the process as quickly as possible is, to the contrary, consistent with

21 defendant's theory that plaintiff did not spread her buttocks wide enough or cough hard enough

22 the first two times to verify that there was no contraband in her body cavities.

23          With respect to plaintiff's claim that the strip search caused her physical pain, it is

24 undisputed that after plaintiff advised Moreland that she was unable to bend at the knees, she was

25 instructed to use a modified method that did not require her to bend her knees.  PL's Depo. at

26 32:5-17 (ECF No. 65-4 at 36).  Although plaintiff alleges that it hurt her back to complete the

27 search by bending at her waist, PL's Depo. at 32:9-10 (ECF No. 65-4 at 36), there is no evidence

28 that the discomfort she felt was so significant that it rendered the search unreasonable.  Nothing in

10

1   the record indicates that plaintiff told Moreland she was unable to bend over due to back pain.

2   Plaintiff's testimony that she spent only a few seconds in the bent position weighs against an

3   inference that the pain was so severe as to render an otherwise permissible search objectively

4   unreasonable.

5           Plaintiff similarly fails to demonstrate that her emotional pain rendered the search

6   unreasonable.  While the courts have "consistently recognized the frightening and humiliating

7   invasion occasioned by a strip search, even when conducted with all due courtesy," Byrd v.

8   Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1143 (9th Cir. 2011) (citations and internal

9   quotation marks omitted), they have nonetheless found visual body cavity searches reasonable

10  when balanced against correctional facilities' "significant interest in conducting a thorough search

11  as a standard part of the intake process," Florence, 566 U.S. at 330; see also Bull, 595 F.3d at

12  975.  In other words, the emotional distress inevitably caused by visual body cavity searches is

13  accounted for in the balancing of intrusion against penological justification that led to the binding

14  holdings in Bell, Florence and Bull.  In any event, any additional distress caused by the manner in

15  which the search was conducted would not affect the Fourth Amendment analysis.  Plaintiff's

16  subjective experience might be relevant to damages had there been a violation of her rights, but

17  the Fourth Amendment analysis of reasonableness is an objective one.  See Ashcroft v. al-Kidd,

18  563 U.S. 731, 737 (2011) (Fourth Amendment reasonableness is predominantly an objective

19  inquiry).

20          With respect to plaintiff's claim that she was threatened with violence if she did not

21  complete the search, the only statement plaintiff identifies is Moreland's warning that additional

22  officers would be called and force could be used if plaintiff did not comply with the strip search

23  as directed.  ECF No. 23 at 3; PL's Depo. at 26:8-11, 27:19-24, 30:7-17 (ECF No. 65-4 at 30-31,

24  34).  It is undisputed that no force was actually used and that no actions predicate to a use of

25  force, such as the summoning of additional officers or even a physical approach by Moreland,

26  were taken.  Moreover, both the complaint and plaintiff's deposition make clear that at the time

27  Moreland told her that other officers would be called to make her complete the search, plaintiff

28  had not yet complied with Moreland's instructions to complete the last step.  ECF No. 23 at 3;

PL's Depo. at 27:16-24, 30:18-20 (ECF No. 65-4 at 31, 34).  Had plaintiff continued to refuse to complete the procedure, the use of reasonable force would have been constitutionally permissible.  See Michenfelder, 860 F.2d at 336 ("the legitimate penological purpose of strip searches—to discover hidden weapons and contraband—justifies using force necessary to induce compliance by difficult inmates").  Moreland's "threat" to use force where force was permissible does not render the search excessive, vindictive, harassing, or unrelated to any legitimate penological interest.

Plaintiff's claim that Moreland ordered her to put her face on the floor, accepted as true, does not change the analysis because there is no evidence that this was more than a fleeting comment with no follow-through.  The bend and cough procedure was completed without plaintiff touching her face to the floor or Moreland saying anything further about it.  A single such statement, even if offensive, does not rise to the level of "exaggerated or excessive means" within the meaning of Michenfelder.  See Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (no Fourth Amendment violation under Michenfelder standard where officer directed a prisoner to manipulate his own genitals for visual inspection and then to "run his finger around his gums").

Finally, assuming Moreland did in fact tell another officer that she did not trust plaintiff because plaintiff leaked, she did so after the search was completed and therefore the comment does not render the search unreasonable.  There is also no evidence that Moreland intended plaintiff to overhear the comment; to the contrary, plaintiff testified she had to put her hear to the door to hear.  Accordingly, the comment cannot establish that the manner of the search was abusive.  Finally, even if Moreland made the comment during the search, and assuming the statement to have been both embarrassing and unprofessional, it did not violate plaintiff's constitutional rights.  See Burton v. City of Spokane (Burton I), No. 06-cv-0322 RHW, 2009 WL 772929, at *4-5, 2009 U.S. Dist. LEXIS 23185, at *12, 15 (E.D. Wash. Mar. 18, 2009) (officers executing search warrant entitled to qualified immunity because alleged comments that "[t]here is no crack in this crack" and "I wonder if he has ever been molested" made during strip search of arrestee did not rise to the level of a constitutional violation), aff'd sub nom. Burton v. Spokane Police Dep't (Burton II), 383 F. App'x 671, 673 (9th Cir. 2010).

1    In sum, plaintiff has not identified evidence that could support a finding that the manner in

2    which Moreland conducted an otherwise permissible search was excessive, vindictive, harassing,

3    or unrelated to any legitimate penological interest.  See Thompson, 111 F.3d at 700 (plaintiff

4    "bears the burden of showing that [prison] officials intentionally used exaggerated or excessive

5    means to enforce security." (alteration in original) (quoting Michenfelder, 860 F.2d at 333).

6                          iv.   Place Where Search Was Conducted

7    It is undisputed that the search was conducted in the booking shower and that plaintiff was

8    in the room by herself with Moreland outside the door.  Plaintiff further alleges, and defendants

9    have not disputed, that there was also a male officer outside the door of the shower.  ECF No. 23

10   at 3.  The question, therefore, is whether the presence of a male officer outside the door of the

11   booking shower resulted in insufficient privacy and rendered the search unreasonable.

12   While "cross-gender strip searches in the absence of an emergency violate an inmate's

13   right under the Fourth Amendment to be free from unreasonable searches," Byrd, 629 F.3d at

14   1146, there is no evidence that such a search occurred in this case.  Plaintiff alleges that after the

15   completion of the strip search Moreland made comments to a male officer who was present

16   behind the door.  However, there are no allegations and plaintiff has identified no evidence that

17   the male officer participated in the search or was able to view plaintiff during the search.

18   Plaintiff's deposition testimony indicates that the male officer would not have been able to see

19   her, as she testified that she heard but did not see Moreland talking to the officer because they

20   were standing outside the door and that she heard Moreland talking to the other officer when she

21   put her ear to the door.  PL's Depo. at 30:21-31:8, 79:2-5 (ECF No. 65-4 at 34-35, 83).  That a

22   male officer was merely present outside the booking shower does not render the search

23   unconstitutional, even if he had an occasional or obstructed view of plaintiff during the search.

24   See Michenfelder, 860 F.2d at 333-34 (no violation where visual body cavity searches of male

25   inmates were conducted within view of female guards from video monitors which provided

26   "indistinct, limited view"); Grummett v. Rushen, 779 F.2d 491, 495-96 (9th Cir. 1985)

27   (occasional viewing of unclothed male inmates by female prison guards did not violate the Fourth

28   Amendment).

13

1       v.   Conclusion

2           For the reasons explained above, construing the undisputed facts in plaintiff's favor and

3   crediting her testimony as to Moreland's statements, the evidence does not support a conclusion

4   that the December 24, 2016, strip search exceeded constitutional limits.  Summary judgment

5   should therefore be granted as to Claim One.

6       vi.   Plaintiff's Objections

7           Plaintiff's newly raised allegation that a male officer was watching (ECF No. 89 at 3)

8   does not alter the finding that the search was reasonable.  Although plaintiff's new statement was

9   not made under penalty of perjury, the court will assume that plaintiff would testify accordingly.

10  Even so, the allegations in the verified complaint and plaintiff's own deposition testimony both

11  make clear that the male officer was outside the door, that Moreland was standing in the doorway

12  to the booking shower during the search, and that Moreland was the officer conducting the strip

13  search.  See ECF No. 23 at 3; Pl's Depo. at 26:20-21, 30:25-31:5, 79:4-5 (ECF No. 65-4 at 30,

14  34-35, 83).  Plaintiff offers no new details regarding the male officer's observation of the search.

15  The unelaborated assertion that he "was there the whole time watching outside the door,"

16  particularly in light of the fact that Moreland was standing in the doorway, does not support an

17  inference that the male officer had more than an occasional or obstructed view of plaintiff during

18  the search.  For this reason, plaintiff has not identified a disputed factual issue material to the

19  constitutionality of the search as conducted by Moreland.

20      B.    Qualified Immunity

21       i.   Legal Standard

22          "Government officials enjoy qualified immunity from civil damages unless their conduct

23  violates 'clearly established statutory or constitutional rights of which a reasonable person would

24  have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v.

25  Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must

26  consider the following: (1) whether the alleged facts, taken in the light most favorable to the

27  plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and

28  (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz,

1  533 U.S. 194, 201 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

2  (overruling Saucier's requirement that the two prongs be decided sequentially).  These questions

3  may be addressed in the order most appropriate to "the circumstances in the particular case at

4  hand."  Pearson, 555 U.S. at 236.  If a court decides that plaintiff's allegations do not support a

5  statutory or constitutional violation, "there is no necessity for further inquiries concerning

6  qualified immunity."  Saucier, 533 U.S. at 201.  On the other hand, if a court determines that the

7  right at issue was not clearly established at the time of the defendant's alleged misconduct, the

8  court need not determine whether plaintiff's allegations support a statutory or constitutional

9  violation.  Pearson, 555 U.S. at 236-42.

10            Having already concluded that there was no constitutional violation, the undersigned now

11  considers in the alternative whether—even if the search exceeded permissible bounds in the

12  opinion of this court—Moreland's conduct violated clearly established law.  The inquiry turns on

13  the state of legal authority in December 2016 regarding the application and balancing of the Bell

14  factors: the scope of the particular intrusion, the manner in which the search is conducted, the

15  justification for initiating it, and the place in which it is conducted.  Bell, 441 U.S. at 559.

16                    ii.   Defendant's Conduct Did Not Violate Clearly Established Law

17                         a.   Scope of Intrusion and Justification for Search

18            At the time of the search, both the Supreme Court and the Ninth Circuit had squarely held

19  that the routine strip searching of a detainee by a same-sex officer, including visual body cavity

20  inspection and use of a "squat and cough" procedure, is an intrusion into privacy the scope of

21  which is categorically justified by the need for institutional security.  Bell, 441 U.S. at 558-560

22  (1979 decision); Florence, 566 U.S. at 330-39 (2012 decision); Bull, 595 F.3d at 971-72 (2010

23  decision).

24                         b.   Manner of the Search

25            At the time in question, it was clearly established that the execution of an otherwise

26  authorized strip search must be reasonable.  See Act Up!/Portland v. Bagley, 988 F.2d 868, 872

27  (9th Cir. 1993) ("clearly established that the Fourth Amendment requires that any strip search be

28  ///

1   conducted in a reasonable manner").[4]  The Ninth Circuit held in 1988 that the manner in which a

2   custodial strip search is conducted may violate the Fourth Amendment if it is "excessive,

3   vindictive, harassing, or unrelated to any legitimate penological interest."  Michenfelder, 860 F.2d

4   at 332.  While this general standard was clearly established at the time of the 2016 search, the

5   undersigned has identified no authority that would have informed a reasonable officer that

6   requiring a detainee to repeat a "cough and squat" procedure three times was so excessive as to be

7   constitutionally impermissible.  Indeed, lower courts have identified no such limitation on the

8   practice.  See, e.g., Crockett, No. 16-cv-0959 PHX JJT (JZB), 2018 WL 10809993, at *7, 2018

9   U.S. Dist. LEXIS 237066, at *19; Johnson, No. 2:08-cv-1494 KJN, 2012 WL 2069561, at *30,

10   2012 U.S. Dist. LEXIS 79380, at *92.

11          Thompson v. Souza, supra, decided in 1977, is the only Ninth Circuit opinion to evaluate

12   whether an otherwise permissible strip search was carried out in an impermissible manner.  The

13   court found in that case that an officer directing a prisoner to manipulate his own genitals for

14   visual inspection and then to "run his finger around his gums" did not constitute "exaggerated or

15   excessive means" within the meaning of Michenfelder.  Thompson, 111 F.3d at 700.  The

16   instructions given to plaintiff in this case, and the comments made by Moreland, are no more

17   excessive or offensive than the directions given in Thompson.[5]  As to the alleged "threat," it was

18   clearly established that reasonable force could be used if plaintiff persisted in refusing to

19   cooperate.  Michenfelder, 860 F.2d at 336.  Under Michenfelder and Thompson, a reasonable

20   _____

21   [4]  The qualified immunity analysis in Act Up!/Portland is otherwise inapplicable here, as it
     predated Bull and Florence, supra.  Prior to those decisions, the law of the circuit was that strip

22   searches of arrestees facing only minor charges had to be supported by reasonable suspicion that
     the individual was carrying or concealing contraband.  See Act Up!/Portland, 988 F.2d at 871-72.

23   [5]  The undersigned has undertaken a thorough review of district court opinions from within the
     Ninth Circuit that apply the Michenfelder/Thompson standard, and has identified no case before

24   or after 2016 finding that a purely visual body cavity search exceeded permissible limits on facts
     similar to those presented here.  In Bealer v. Sec'y of Cal. Dep't of Corr., No. 1:16-cv-00671 LJO

25   MJS, 2017 U.S. Dist. LEXIS 61958 at *11 (E.D. Cal. Apr. 24, 2017), the court found on
     screening that plaintiff had presented a cognizable claim based on an allegedly lewd comment

26   made by the officer conducting the strip search.  The case at bar does not involve such
     allegations.  The undersigned is unaware of any authority finding that comments not arguably

27   amounting to sexual harassment, without more, rendered abusive a purely visual body cavity

28   search that was otherwise permissible under Florence and Bull.

16

1   officer in Moreland's position would not have had reason to think that any of her comments

2   crossed a constitutionally mandated line.

3                           iii.   Place Where Search Was Conducted

4          While it was clearly established in 2016 that non-emergency cross-gender strip searches

5   violate the Fourth Amendment, Byrd, 629 F.3d at 1146, there was no such prohibition on the

6   presence of a male officer outside the area in which the search took place —even if the

7   circumstances permitted an occasional or obstructed view of the search.  See Michenfelder,

8   860 F.2d at 333-34 (no violation where visual body cavity searches of male inmates were

9   conducted within view of female guards from video monitors which provided "indistinct, limited

10  view"); Grummett, 779 F.2d at 495-96 (occasional viewing of unclothed male inmates by female

11  prison guards did not violate the Fourth Amendment); see also Burton II, 383 F. App'x at 673 (no

12  clearly established law that brief presence of female officers during strip search violated Fourth

13  Amendment).

14         For all the reasons discussed above, it would not have been clear to a reasonable officer at

15  the time of the search in question that Moreland's actions exceeded constitutional limits.

16  Accordingly, Moreland is entitled to qualified immunity.

17                          iv.   Plaintiff's Objections

18         Taking into consideration plaintiff's allegation that a male officer was outside the door

19  watching (ECF No. 89 at 3), defendant Moreland is still entitled to qualified immunity.  As

20  already discussed above, plaintiff's bare statement does not demonstrate that the male officer had

21  more than an occasional or obstructed view of plaintiff during the search, and it is not clearly

22  established that such presence violates the Fourth Amendment.  Moreover, even if the court

23  assumes that the male officer was observing plaintiff in a manner that was unreasonable, he is not

24  a defendant in this case, and there are no allegations or evidence suggesting that Moreland, who

25  was standing in the doorway and observing plaintiff as she completed her strip search, was or

26  should have been aware that the male officer was able to observe and was in fact observing

27  plaintiff in an inappropriate manner.  It therefore would not have been clear to a reasonable

28  officer in Moreland's position that the strip search violated plaintiff's Fourth Amendment rights.

VII.    Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that the motion for summary judgment be granted as to your claim against Moreland based on the December 24, 2016, strip search because the evidence shows that the search was did not violate the constitution.  Alternatively, Officer Moreland is entitled to qualified immunity because the law was not clear at the time of the search that her actions were unconstitutional.

CONCLUSION

For all the reasons set forth above, IT IS HEREBY ORDERED that the Findings and Recommendations at ECF No. 85 are WITHDRAWN.

IT IS FURTHER RECOMMENDED that:

1.   The motion for summary judgment (ECF No. 65) be GRANTED as to Claim One on the ground that Moreland did not violate plaintiff's Fourth Amendment rights or, alternatively, that Moreland is entitled to qualified immunity;

2.   This case be dismissed; and

3.   Judgment entered in defendants' favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 12, 2023.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

18